# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

CASE NO.:

GREGG K. SILVERS,

    *Plaintiff*,

vs.

BLUE CROSS BLUE SHIELD OF TEXAS
and MAGELLAN HEALTHCARE,

    *Defendants*.

_____/

## COMPLAINT

Plaintiff, Gregg K. Silvers ("Silvers"), sues Defendants, Blue Cross Blue Shield of Texas ("BCBSTX") and Magellan Healthcare ("Magellan"), as follows:

### NATURE OF THE ACTION, PARTIES, JURISDICTION, AND VENUE

1. This is an action arising out of Defendants' breach of a single case health insurance agreement, namely Defendants' decision to deny covered claims relating to behavioral health services provided to Silvers' minor daughter by White Horse Ranch ("WHR," a healing ranch for girls situated in Mooreland, Oklahoma).

2. Silvers was at all material times a citizen and resident of Princeton, Texas, Collin County, and is in all respects *sui juris*.

3. Upon information and belief, BCBSTX was at all material times an insurance company with its principal place of business / headquarters in the State of Texas (seemingly multiple office locations spanning the entire State of Texas) and engaged in the

business of selling and / or administering health insurance and / or deciding and / or paying health insurance claims.

4. Upon information and belief, Magellan was at all material times a third party administrator ("TPA") under the subject BCBSTX insurance policy / plan relating to mental health and substance abuse claims. Upon information and belief, Magellan's principal place of business / headquarters is situated in the State of Maryland.

5. This Court has original jurisdiction over this matter pursuant to Title 28, United States Code, Section 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of any fees, costs, interest, or the like.

6. Venue is proper in the Eastern District Court of Texas pursuant to Title 28, United States Code, Section 1391(b), since, for examples, (a) one of the Defendants (BCBSTX) has its principal place of business / headquarters in Texas, (b) facts and circumstances (*e.g.*, claim denial correspondence) giving rise to this cause of action transpired (at least in part) in Princeton, Texas, and (c) Silvers resides in Princeton, Texas.

7. All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals, though not legally required because the breached single case agreement does not specify any such pre-suit appeals) have occurred, been performed, been waived, or were futile.

**COMMON ALLEGATIONS**

8. At all material times, Silvers was covered by a BCBSTX health insurance policy / plan bearing Group No. 166915 and Member ID No. ZGN924890237 (the "Policy"), and his minor daughter was an insured dependent under the Policy. Ordinarily, a copy of the Policy would have been attached hereto as an exhibit, but Defendants refused

Silvers' / undersigned counsel's request(s) for a copy (certified or otherwise) of same. But, as discussed in greater detail below, the germane contract that this action revolves around is the single case agreement, which is attached as **Exhibit A**.

9. On August 15, 2016, Silvers' minor daughter began medically necessary behavioral / mental health related treatments at WHR, which, again, is an Oklahoma-based facility aimed at healing adolescent girls with co-occurring behaviors / disorders in a warm, welcoming ranch environment.

10. WHR is certified by the Oklahoma Department of Mental Health and Substance Abuse Services and the Oklahoma Department of Human Services. WHR is also accredited by the Commission on Accreditation of Rehabilitation Facilities.

11. Silvers' minor daughter remained in WHR's care for 184 days at a heavily discounted daily rate of $470.00 (per the single case agreement, Ex. A), bringing the total bill for the subject care to $86,480.00. BCBSTX properly conceded coverage by tendering $5,866.00 to WHR in relation to the subject care (per the single case agreement, Ex. A), but Defendants inexplicably denied the remaining $80,614.00 in breach of the single case agreement (Ex. A).

12. The governing single case agreement provides, in pertinent part, as follows: "Magellan will process the claim for covered and authorized behavioral services provided by [WHR] to the above-named member at the **negotiated rate RTC (SA) at $470 per diem inclusive of ancillary and professional fees**." Ex. A at 1 (emphasis in original). Again, $5,866.00 was properly processed by Defendants, but, again, $80,614.00 was inexplicably not processed; hence, this lawsuit.

13. The governing single case agreement further provides, in pertinent part, that "Magellan will have no financial responsibility for services provided" if the "payor" (*i.e.*, BCBSTX) "retroactively determine[s] that the member was not eligible." Ex. A at 2. Here, Silvers' minor daughter was an eligible insured dependent at all material times and Defendants have not tried to somehow say otherwise. Because eligibility is not an issue here, Defendants' attempted shirking of their "financial responsibility for services provided" by WHR to Silvers' minor daughter does not find support in the operative single case agreement.

14. The governing single case agreement further provides, in pertinent part, as follows: "This letter constitutes the entire agreement between the parties and supersedes any prior agreements between the parties, whether written or oral, relating to the subject matter of this letter." Ex. A at 2.

15. The governing single case agreement even goes on to offer in-network status to WHR, Ex. A at 2, which constitutes Defendants' acknowledgement of the quality and appropriateness of the care provided by WHR to patients (*i.e.*, to Defendants' insureds) such as Silvers' minor daughter.

16. In arriving at the single case agreement, Defendants confirmed the need for Silvers' minor daughter to treat at WHR.

17. And in paying for $5,866.00 of the $86,480.00 in claims submitted by WHR to Defendants in relation to care provided to Silvers' minor daughter, Defendants confirmed the need for Silvers' minor daughter to treat at WHR.

18. Upon information and belief, Magellan (as TPA) administered claims made by WHR under the single case agreement for the care provided to Silvers' minor daughter.

Upon information and belief, BCBSTX was then the payor – here, paying $5,866.00 worth of the subject claims made under the single case agreement but inexplicably denying the remaining $80,614.00.

19. It is not entirely clear at this juncture (because Defendants refused to substantively communicate with Silvers, WHR, and / or undersigned counsel pre-suit and / or oblige their germane documentation / information requests) whether BCBSTX or Magellan or both initially made the wayward decision to renege on the single case agreement, though, from what is presently known, it is clear that both Defendants ultimately ratified the legally untenable claims denials.

20. As to Defendants' lackluster pre-suit communications, we will illustrate same by citing three letters spanning the last three months. On July 26, 2017, Silvers' legal counsel sent a letter to Defendants, which read, in pertinent part, as follows:

> Please be advised that Merlin Law Group has been retained concerning the breach (*i.e.*, attempted reneging) of the subject single case agreement by BlueCross and BlueShield of Texas ("BCBSTX") and / or Magellan Healthcare ("Magellan"); *i.e.*, BCBSTX's and / or Magellan's refusal to fully indemnify the Silvers family under the subject single case agreement in relation to the care received by Mr. Silvers' minor daughter … at White Horse Ranch.  A copy of the subject single case agreement (which is a binding and enforceable contract) is enclosed for your ease of reference. Also enclosed please find a HIPAA-compliant authorization form from Mr. Silvers concerning Merlin Law Group's representation.
>
> We ask that BCBSTX / Magellan promptly honor its single case agreement by tendering the balance due and owing under the single case agreement, which such agreement legally trumps / supplants the insuring agreement associated with the above-captioned plan; hence, the point of a 'single case' agreement. The total billed by White Horse Ranch to BCBSTX / Magellan in accordance with the single case agreement was $86,480.00 (184 days at $470.00 / day).[1]  Of this billed amount, we understand $5,866.00 was paid

---

[1] Please note that White Horse Ranch's typical daily rate is $1,595.00, but such was heavily compromised with BCBSTX / Magellan in order to complete the single case agreement and carry out Ms. Silvers' needed care.

by BCBSTX / Magellan, leaving an $80,614.00 balance (without accrued interest) presently owed by BCBSTX / Magellan (and to which the Silvers family is indebted to White Horse Ranch until BCBSTX / Magellan honors the subject single case agreement). As we see it, there is no legal way around the single case agreement for BCBSTX / Magellan; *i.e.*, the attempted reneging by BCBSTX / Magellan will not hold legal water in the courtroom should BCBSTX / Magellan regrettably force this matter into litigation by persisting with its inappropriate attempted reneging.

Should BCBSTX / Magellan regrettably and wrongly persist with its attempted reneging on the subject single case agreement, please promptly provide us with a copy of the entire administrative record. The administrative record should consist, at minimum, of the following: **(1)** Complete, certified copies of all plan documents (master policy, summary plan description, benefit booklet, certificate of coverage, or the like) in effect at the times of the subject White Horse Ranch medical services and / or at the times of any claims made relating to the subject medical services; **(2)** Copies of all correspondence and / or documents exchanged between BCBSTX and White Horse Ranch regarding the Ms. Silvers, the subject single case agreement, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(3)** Copies of all correspondence and / or documents exchanged between Magellan and White Horse Ranch regarding the Ms. Silvers, the subject single case agreement, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(4)** Copies of all Ms. Silvers medical records in the possession of BCBSTX and / or Magellan; **(5)** Copies of all correspondence and / or documents exchanged between BCBSTX and Ms. Silvers and / or any Ms. Silvers representatives (*e.g.*, parents or White Horse Ranch) regarding Ms. Silvers, the subject single case agreement, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(6)** Copies of all correspondence and / or documents exchanged between Magellan and Ms. Silvers and / or any Ms. Silvers representatives (*e.g.*, parents or White Horse Ranch) regarding Ms. Silvers, the subject single case agreement, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(7)** Copies of all correspondence and / or documents exchanged between BCBSTX and any other party (less any attorney-client privileged data, of course) regarding Ms. Silvers, the subject single case agreement, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(8)** Copies of all correspondence and / or documents exchanged between Magellan and any other party (less any attorney-client privileged data, of course) regarding Ms. Silvers, the subject single case agreement, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(9)** Identification of all single case agreement and / or policy / plan language

upon which the claim(s) decision-making / single case agreement reneging attempts were based; **(10)** Contact information for any medical professionals enlisted by BCBSTX and / or Magellan regarding Ms. Silvers, the subject single case agreement, the subject policy / plan, the subject medical services, and / or any claims made relating to the subject medical services; **(11)** Transcripts and audio recordings of any recorded statements or phone calls between BCBSTX and Ms. Silvers, any representatives of Ms. Silvers, any medical providers for Ms. Silvers, White Horse Ranch, and / or any other party (less any attorney-client privileged conversations, of course); **(12)** Transcripts and audio recordings of any recorded statements or phone calls between Magellan and Ms. Silvers, any representatives of Ms. Silvers, any medical providers for Ms. Silvers, White Horse Ranch, and / or any other party (less any attorney-client privileged conversations, of course); **(13)** All EOBs relating to any claims that were made relating to the subject medical services; **(14)** All White Horse Ranch billing paperwork received by BCBSTX and / or Magellan relating to Ms. Silvers; **(15)** All evidence of any payment(s) made by (*e.g.*, the $5,866.00 worth of payments made by) BCBSTX and / or Magellan relating to any claims that were made relating to the subject medical services; **(16)** All guidelines, manuals, written protocol, medical treatises, medical literature, and / or the like upon which BCBSTX and / or Magellan partially or wholly based its claim(s) decisions / single case agreement reneging attempts; **(17)** All of BCBSTX's and / or Magellan's support (legal, contractual, or otherwise) for its single case agreement reneging attempts; and **(18)** Copies of any other documents that BCBSTX and / or Magellan partially or wholly relied on in attempting to renege on the subject single case agreement relating to the subject medical services.

Equipped with this legally required documentation / information, we will be in a position to assess and carry out the next step (*e.g.*, pre-suit appeal(s), complaints / grievances with the office of insurance regulation, letters to Scott Serota, litigation, and / or *et cetera*).  We trust that any and all applicable pre-suit administrative appeal deadlines will be tolled pending your production of the germane documentation / information set forth above; *i.e.*, we trust any pre-suit administrative appeal deadline clock (like 90 days or 180 days or whatever the case may be under the particular policy or plan) will not start ticking until we receive the requested germane / documentation set forth above.  If we err in that trust, we expect BCBSTX / Magellan to immediately say so.

But, again, we only require the administrative record if BCBSTX / Magellan insists on maintaining its wrongs; *i.e.*, insists on maintaining its attempt to renege on the subject single case agreement.  …

21. Radio silence ensued from Defendants, so the following letter was sent to Defendants by Silvers' legal counsel on September 15, 2017:

> Nearly two months have passed since my July 26, 2017, letter without response, which is entirely unacceptable. For ease of reference, a copy of my July 26, 2017, letter is enclosed. If we do not receive a response by close of business on October 6, 2017, we will, regrettably, be left with no choice other than to proceed more formally. Thank you.

22. By letter dated September 28, 2017 (received by Silvers' legal counsel on October 9, 2017), BCBSTX finally put forth a "response" that read, in pertinent part, as follows: "we thoroughly reviewed your claim(s), but must maintain our benefit determination."

23. BCBSTX's refusal to provide any explanation as to why it "must maintain [its] benefit determination" and Magellan's refusal to respond to pre-suit correspondence altogether coincide with reality – reality being that there simply is no reasonable explanation that Defendants could provide that would lend any sort of credence to their attempt to shirk their "financial responsibility for services provided" pursuant to the single case agreement (Ex. A). The single case agreement directed Defendants to pay WHR for the services provided to Silvers' minor daughter, period. BCBSTX started to pay but then inexplicably pulled the rug out from underneath WHR and Silvers for reasons still unknown. Defendants' pulling the rug out from underneath WHR and Silvers in complete renege fashion constitutes a breach of the single case agreement.

24. At all material times, the single case agreement was in full force and effect and was a legally valid and binding contract.

25. Silvers has suffered significant financial harm (a little over $80,000.00 in just outstanding benefits) as a result of Defendants' reneging on the single case agreement.

26. Silvers attempted to appeal (or sought reconsideration of) Defendants' wrongful payment refusals (though not legally required to do so because the single case agreement does not set forth a pre-suit appeal framework) in an effort to accomplish Defendants' doing the right thing (*i.e.*, full indemnification) sans litigation, to no avail. Hence, this lawsuit as Silvers' last resort; indeed, Silvers patiently waited for reply correspondence from Defendants to arrive (*see* ¶ 22, *supra*) before commencing litigation.

## COUNT I – BREACH OF CONTRACT

27. Silvers re-alleges Paragraphs 1 through 26 as if fully set forth herein.

28. This is a claim to recover from Defendants the negotiated per diem rate under the single case agreement (Ex. A) charged by WHR in relation to care provided to Silvers' minor daughter starting in 2016, for which the balance (sans interest) presently totals $80,614.00.

29. Again, the singe case agreement "constitute[d] the entire agreement between the parties and supersede[d] any prior agreements between the parties, whether written or oral, relating to the subject matter of this letter," Ex. A at 2, which such subject matter was / is payment of the WHR bills relating to care of Silvers' minor daughter.

30. After BCBSTX tendered $5,866.00 to WHR in relation to the subject care pursuant to the single case agreement, Defendants unilaterally and nakedly chose to breach / renege on the single case agreement by denying the remaining $80,614.00 owed to WHR in relation to the care provided by WHR to Silvers' minor daughter.

31. Silvers has no other adequate remedy at law to address the injuries he has suffered as a result of Defendants' denial of monies owed under the operative single case agreement (Ex. A).

32. As a further result of Defendants' denial of monies owed under the operative single case agreement (Ex. A), Silvers has been forced to retain legal counsel to represent him in this matter and has agreed to pay reasonable attorneys' fees and costs in relation to same.

WHEREFORE, Plaintiff, Gregg K. Silvers, requests the entry of judgment against Defendants, Blue Cross Blue Shield of Texas and Magellan Healthcare, for liability and for damages including, but not necessarily limited to, past-due contractual monies ($80,614.00), for all awardable attorneys' fees, costs, and interest, and for such other relief as this Court deems equitable, just and proper.[2]

## JURY DEMAND

33. Plaintiff, Gregg K. Silvers, demands a trial by jury on all issues so triable as a matter of right.

Dated this 12th day of October, 2017.

Respectfully submitted,

**MERLIN LAW GROUP, P.A.**
222 Lakeview Ave., Suite 1250
West Palm Beach, Florida 33401
(561) 855-2120
(561) 249-1283 *facsimile*

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Texas Bar No. 24103030
jgreyber@merlinlawgroup.com
hcasebolt@merlinlawgroup.com
*Attorney for Plaintiff*

---

[2] Silvers reserves the right to amend this Complaint (as a matter of right or pursuant to leave of Court) should additional liabilities (*e.g.*, bad faith) and damages (*e.g.*, consequential or punitive) manifest as litigation / discovery progresses.